STATE ex Rel. VANEK, Relator, *v.* JUSTICE COURT et al.,
RESPONDENTS.

(No. 9,008.)

(Submitted June 4, 1940.   Decided July 11, 1940.)

[104 Pac. (2d) 14.]

· *Mr. W. W. Wertz,* for Relator, submitted a brief and argued the cause orally.

Respondent *A. J. White,* Justice of the Peace, appearing *pro se,* submitted a memorandum and presented an oral statement.

*Mr. Wellington D. Rankin, Amicus Curiae,* submitted a brief.

MR. JUSTICE ERICKSON delivered the opinion of the court.

This matter is before us on a petition for a writ of mandamus directed to the respondent, a justice of the peace of Lewis and Clark county, commanding him to proceed and dispose of a complaint made by the relator against J. Burke Clements. An alternative writ was issued and an appearance made by the respondent personally and by *amicus curiae* who argued the matter to the court on behalf of Mr. Clements. On the hearing the court deemed the return of the respondent insufficient, and he was given time to file an amended return. The relator filed a reply to the amended return which put in issue many fact questions.

From the record and the arguments it appears that on May 13, 1940, shortly before 5 P. M., the relator with his counsel appeared before respondent in his court and made complaint of a public offense having been committed by one J. Burke Clements. The complaint was that Clements was guilty of a misdemeanor in that he had violated the provisions of section 10786, Revised Codes of 1935. This section provides: "No holder of a public position, other than an office filled by the voters, shall be a delegate to a convention for the election district that elects the officer or board under whom he directly or indirectly holds such

position, nor shall he be a member of a political committee for such district.''

The relator complained that Clements was at the time chairman of the Industrial Accident Board of the State of Montana and at the same time held the position of Democratic precinct committeeman in Precinct No. 6, Lewis and Clark county, and was also a member and vice-chairman of the Democratic State Central Committee.

The versions of what took place in respondent's office differ. Relator states that respondent refused to consider the complaint or have anything to do with it. Respondent denies this and says he took no action on the complaint then because of other business and because it was closing time for his court, it then being 5 o'clock.

Relator's attorney filed an affidavit to the effect that on May 14 he, with the respondent, conferred with the county attorney of Lewis and Clark county, and again ·respondent stated he would have nothing to do with the matter, and that the conversation between respondent and the county attorney dealt with the political effect on them of the issuance of a warrant for the arrest of Clements. Respondent, on the other hand, denies that he had refused to take cognizance of the complaint, and states his failure to act on the 13th or 14th by examining relator or otherwise was because of the press of other business. The petition was filed in this court on May 14.

In his amended return respondent states he is proceeding with the matter; that on May 28 he examined relator under oath; that he secured from him the names of other witnesses; that he has examined five other witnesses; that he has been referred to other witnesses who reside outside of Helena whom he wishes to examine, and finally ''that he has not delayed consideration of the matter and will not delay the matter in the future; that he will not take any more time than is reasonably necessary to reach a conclusion as to whether or not reasonable cause exists for the issuance of a warrant.'' This amended return was made on June 6.

While the matter has been pending here this court has not been apprised that the matter has been disposed of, and since, if the respondent has acted after that date the matter would be disposed of, and there would be no purpose in this court acting further in the matter, we must assume that the respondent is still considering the matter and that he has not disposed of it as prayed by relator, either by the issuance of a warrant or the dismissal of the complaint. In the disposition of the matter we need not determine the conflict as to either the law or the facts, for we are not concerned with either. What we are concerned with is whether a court before which a complaint is filed can indefinitely postpone taking any action at all.

The sole question before this court is: Has the delay of the respondent in acting on the complaint amounted to a failure on his part to perform his duties under section 10786, Revised Codes, and, if so, will mandamus or supervisory control lie to compel him to perform those duties?

The sections of our Codes which must guide us in determining our action here are sections 11729 and 11730, Revised Codes of 1935. The first section provides: "Every person who has reason to believe that a public offense has been committed and that a certain person has committed such offense, must make complaint of such person before a magistrate of the township in which the offense was committed, or if there is no magistrate in such township, before the nearest magistrate."

The relator appeared before the respondent justice of the peace pursuant to this section and made his complaint against Clements. The respondent's duty when such complaint was made is set out in the next section (11730), which provides: "When a complaint is made before a magistrate charging a person with the commission of a public offense, such magistrate must examine the complainant, under oath, as to his knowledge of the commission of the offense charged, and he may also examine any other person. If from such examination, or from any other facts which may lawfully come to the knowledge of the magistrate, it appears to him probable that the alleged offense has been committed within his jurisdiction and that the person

accused committed it, such magistrate must immediately issue his warrant for the arrest of such person."

It was the duty of the respondent as set out in this section, when the complaint was made by the relator, to examine the relator under oath as to the relator's knowledge of the commission of the offense charged. The respondent himself admits in his return that he did not examine the relator until the 29th day of May—some two weeks after the complaint was lodged. On this latter date he secured from the relator the names of witnesses as to the alleged offense, and since that time, according to his amended return, he has examined some five or six witnesses, and has taken at least two affidavits.' This latter action is in accord with the provision of the section which provides that "he may also examine any other person."

In examining the complainant and other persons whom he may wish to examine, it is the duty of the respondent to determine whether it is probable that the alleged offense has been committed within his jurisdiction and that the person accused committed it. It is not his duty to examine every possible person who might have any knowledge of the facts; nor is it his duty to determine, as a jury or trial court, the guilt or innocence of the person accused. The final determination of that question rests with the trial court and jury upon trial. The statute obviously, under a summary proceeding such as this, does not contemplate that the justice of the peace shall go into the matter with the thoroughness and completeness that is required in the trial of an accused person after he has been arrested.

In this case the respondent has consumed nearly two months of time to determine whether or not probable cause exists for the issuance of the warrant of arrest. To our minds the statute does not contemplate any such long drawn out investigation. The justice of the peace shall be careful not to issue a warrant for arrest where there is no probable cause to believe that an offense has been committed, or that the person accused is guilty of it, and certainly the statute contemplates that the justice of the peace take a reasonable time in disposing of the matter. But

it is not the intention of the statute that a justice of the peace should spend months of time and examine a great number of witnesses before taking action either by dismissing the complaint or by issuing the warrant. Certainly the examination of six witnesses as to the question whether or not it is probable that Clements violated the provisions of section 10786, and the consumption of almost two months' time in doing it should, if the respondent is acting in good faith, have brought him to a determination of the question sufficient to dispose of the complaint either by the issuance of a warrant or by its dismissal. The conduct of the respondent seems to bring this case within the oft repeated statement that ''Justice delayed is justice denied.''

For the benefit of the accused, as well as the state, after this exhaustive inquiry, it would seem that immediate action on the part of respondent is required. The statute from its very terms contemplates reasonably prompt action. This is indicated, in addition to what has been said heretofore, by the requirement of the statute that, should the magistrate determine that it is probable that the offense had been committed and the accused had committed it, ''such magistrate must *immediately* issue his warrant for the arrest of such person.''

*Amicus curiae* in his brief urges that mandamus will not lie against the respondent. His argument is based upon the theory that the petition of relator requests of this court a writ of mandate to compel the respondent justice of the peace to issue a warrant for the arrest of Clements. Were this the case we would agree with counsel. The determination of the question whether or not a warrant should issue rests in the sound judicial discretion of the magistrate. However, in this case the relator does not seek of this court that it issue an order controlling the discretion of the magistrate, but merely an order commanding him to comply with the provisions of section 11730, and act either by the dismissal of relator's complaint or by the issuance of the warrant of arrest. It is the accepted rule that in that situation mandamus will lie. (*State ex rel. Musselshell County* v. *District Court,* 89 Mont. 531, 300 Pac. 235, 82 A. L. R. 1158; *State ex rel. Brophy* v. *District Court,* 95 Mont. 479, 27 Pac.

(2d) 509, and see *People ex rel. Hamilton* v. *Barnes,* 66 Cal. 594, 6 Pac. 698, 699, where the court said: "The duties of the magistrate are pointed out in clear and distinct terms, and especially enjoined by imperative words. It is difficult to employ language more mandatory in character. As to the further duties of the magistrate, the same imperative words are used. * * * We are of opinion that the magistrate was commanded by the law to proceed with the examination in the case before us, and that on his failure to do so the writ asked for to compel him is appropriate." (See, also, *Benners, Justice of the Peace,* v. *State ex rel. Heflin,* 124 Ala. 97, 26 So. 942.)

It is our conclusion, therefore, that the writ prayed for should issue. However, in view of the statements in respondent's return and amended return to the effect that he is proceeding in his investigation of this matter and that he expects to continue to make investigation as promptly as possible, the respondent will be given ten days in which to comply with the order of the court. It is ordered that the respondent comply with the provisions of section 11730, Revised Codes of 1935, within ten days from the date of this order, and dispose of the complaint either by the issuance of a warrant of arrest of the accused or by dismissal of the complaint.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANGSTMAN and ARNOLD concur.

MR. JUSTICE MORRIS:

I dissent. The accused is charged with the violation of section 10786, Revised Codes. This section is a part of Chapter 6 of the Penal Code—the Corrupt Practices Act. The Act was initiated and became a law by direct vote of the people at the general election of 1912. At the same election another initiated measure became a law—the Direct Primary Law, Chapter 65 of the Political Code. These two initiated measures were clearly intended to purify elections.

Prior to the initiation and approval of the Primary Election Law the old convention system was in vogue in this state. Sec-

tions 10784, 10785 and 10786, Revised Codes, as parts of the Corrupt Practices Act are *in pari materia* and must be read and construed together. They provide as follows:

Section 10784: "No person shall, in order to aid or promote his nomination or election, directly or indirectly, himself or through any other person, promise to appoint another person, or promise to secure or aid in securing the appointment, nomination, or election of another person to any public or private position or employment, or to any position of honor, trust, or emolument, except that he may publicly announce or define what is his choice or purpose in relation to any election in which he may be called to take part, if elected, and if he is a candidate for nomination or election as a member of the legislative assembly, he may pledge himself to vote for the people's choice for United States senator, or state what his action will be on such vote."

Section 10785: "No holder of a public position or office, other than an office filled by the voters, shall pay or contribute to aid or promote the nomination or election of any other person to public office. No person shall invite, demand, or accept payment or contribution from such holder of a public position or office for campaign purposes."

Section 10786: "No holder of a public position, other than an office filled by the voters, shall be a delegate to a convention for the election district that elects the officer or board under whom he directly or indirectly holds such position, nor shall he be a member of a political committee for such district."

When the last mentioned section was drafted it appears as clear as the noonday sun that the authors of the chapter were desirous of placing on the statute books a law that would prohibit a candidate for office, such as a candidate for re-election as Governor, or a group of candidates who, if re-elected, would have the power to appoint political associates and assistants to office.

This group of sections was intended to prevent any candidate or group of candidates for re-election from packing nominating conventions with appointees and perpetuating themselves in

office. That is all the Act means so far as these sections are concerned. The old convention system has been superseded by the direct primary, and section 10786 is a dead letter. True, the Corrupt Practices Act in which the section is found and the Direct Primary Measure became laws at the same time, and it might be argued that one does not violate any provision of the other. The answer to that argument is that being initiated, measured and obviously championed by much the same group, the movants in the matter could not be assured that both measures would be approved, and in the event the primary election measure did not carry at the election, the Corrupt Practices Act would bring part of the reform sought.

In the instant case the accused is an appointee of the present Governor of Montana; under the old convention system candidates for Governor were selected by a convention made up of delegates frequently chosen at the instance of candidates for state office acting through local committeemen. Under such conditions section 10786 might apply if its ambiguities could be eliminated; but now that Governors and other state officers are nominated by the direct vote of the people, the reason for the section no longer exists, and "when the reason of a rule ceases, so should the rule itself." (Sec. 8739, Rev. Codes.)

Section 10786 is ambiguous in that it provides that persons holding public positions shall not be delegates to "a convention for the *election district* that elects the officer or board under whom he directly or indirectly holds * * * ." The accused does not hold his office under any such officer or board as the section refers to, nor does he represent any district as a county or state committeeman.

There is no precedent, and, in my opinion, no authority in law that justifies the exercise of this court's supervisory powers in the instant case. Being convinced that the allegations of the petition, if true, would not constitute an offense under any of the provisions of the statutes cited, the only affirmative action, if any, that we would be justified in taking would be to direct that the proceeding be dismissed.